IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| AMERICAN HOUSING FOUNDATION | § | CASE NO. 09-20232-RLJ11 |
| | § | (involuntary) |
| ALLEGED DEBTOR. | § | |

## AFFIDAVIT IN SUPPORT OF MOTION TO RESTRICT ALLEGED DEBTOR'S USE OR DISPOSITION OF CERTAIN PROPERTY AND PROCEEDS UNDER SECTION 303(f)

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

BEFORE ME, the undersigned authority, on this day personally appeared Chad Crozier, who, being by me first duly sworn upon his oath, deposes and states as follows:

1. "My name is Chad Crozier. I am more than twenty-one (21) years of age and am competent and authorized to make this Affidavit. The following facts are either within my personal knowledge or are set forth in the business records of which I am a custodian.

2. I am a Vice President of Texas Capital Bank, National Association ("Texas Capital"). I have had primary responsibility for the loan made by Texas Capital to American Housing Foundation ("AHF" or the "Alleged Debtor").

3. AHF's collective debt to Texas Capital is evidenced by a promissory note, modifications to such promissory note and other related documents (the "Loan Documents") executed by AHF in favor of Texas Capital, which are identified, without limitation, as follows:

   a. Promissory Note dated June 25, 2004, payable to Texas Capital in the original principal amount of $3,000,000.00 (the "Original AHF Note");

   b. Amended and Restated Promissory Note dated December 30, 2004 (the "First Amended AHF Note") increasing the maximum principal amount of the Original AHF Note to $5,000,000.00;

c. Second Amended and Restated Promissory Note dated February 22, 2007 (the "Second Amended AHF Note") (the Original AHF Note, as amended and restated by the First Amended AHF Note and the Second Amended AHF Note, is hereinafter referred to as the "AHF Note");

d. Pledge and Security Agreement dated June 24, 2004 (the "Original Security Agreement");

e. Amended and Restated Pledge and Security Agreement dated effective December 30, 2004, (the "Amended Security Agreement") (the Original Security Agreement, as amended by the Amended Security Agreement, is hereinafter referred to as the "Security Agreement"); and

f. UCC Financing Statement filed with the Texas Secretary of State on November 12, 2004 (as amended on January 3, 2005, and October 3, 2005, the "UCC").

4. I have reviewed and am familiar with the documents and records identified as the Loan Documents. The Loan Documents were made at or near the time of the occurrence of the matters set forth by those documents and records, and were made by or with information provided by a person with personal knowledge of the events described therein. It is in the regular course of Texas Capital's business to make the documents and records such as those collectively referred to as the Loan Documents, and it is in the regular course of Texas Capital's business to keep and maintain documents and records such as the Loan Documents. True and correct copies of the Loan Documents are attached hereto.

5. The AHF Note matured on April 30, 2009. Pursuant to the Loan Documents referenced above, AHF's indebtedness to Texas Capital is secured by valid, perfected, first-priority lien and security interests on certain collateral owned by AHF, as more specifically described in the Loan Documents (the "Collateral").

6. The Collateral primarily consists of, without limitation, Accounts,[1] chattel paper, deposit account at Texas Capital (the "Account"), funds deposited in the Account, proceeds,[2] and insurance proceeds, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto. The Account was established in connection with the Loan for, among other things, the deposit of all cash proceeds of the Collateral pursuant to Section 7.3 of the Security Agreement. The current balance of the Account is $30,404.88.

7. Additionally, AHF's obligations to Texas Capital under the AHF Note are cross collateralized by a pledge of real property and other assets owned by Brandywood Housing, Ltd. ("Brandywood"), an affiliate of AHF, to further secure the payment of the AHF Note.

8. The Collateral is also subject to the indebtedness owed by Brandywood to Texas Capital, as evidenced by that certain promissory note December 30, 2004, payable to Texas Capital in the original principal amount of $9,500,000.00 (the "Brandywood Loan"), as fully set out in the Amended Security Agreement. The Brandywood Loan also matured on April 30, 2009.

9. As of April 21, 2009, approximately $2,504,580.31 was owed pursuant to the AHF Note, and approximately $7,101,086.09 was owed on the Brandywood Loan. Interest, fees, expenses, and other charges continue to accrue on the AHF Note and Brandywood Loan.

---

[1] Accounts as defined in the Loan Documents, include, without limitation, each of the following, whether now owned or hereafter acquired by the Debtor: (a) all rights to payment for goods sold or leased or services rendered whether or not earned by performance, (b) all accounts receivable (including Health Care Insurance Receivables), (c) all rights to receive any payment of money or other form of consideration, (d) all security pledged, assigned, or granted to or held to secure any of the foregoing, (e) all guaranties of, or indemnifications with respect to, any of the foregoing, (f) all Chattel Paper, and (g) all rights as unpaid sellers of goods or services, including, but not limited to, all rights of stoppage in transit, replevin, reclamation, and resale.

[2] Proceeds in the Texas Capital Loan Documents, include, without limitation, each of the following, whether now owned or hereafter acquired by the Defendant: any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to the Debtor from time to time with respect to any of the Collateral.

10. Upon learning of the filing of the *Involuntary Petition for Relief under Chapter 11* (the "<u>Petition</u>") against the Alleged Debtor, Texas Capital began evaluating the circumstances surrounding the filing of the Petition. I went to AHF's Dallas office in early May to speak to an AHF representative and obtain information regarding the circumstances surrounding the filing of the Petition. I discovered that AHF had vacated its Dallas office. A security guard informed me that AHF had "moved out" of its Dallas offices in late April.

11. I was informed that AHF's CFO resigned in mid April, 2009. Texas Capital and its counsel have also been told that Steve Sterquell Sr. allegedly structured and executed numerous transactions on AHF's behalf that other AHF insiders and management were never aware of. Additionally, Texas Capital has requested AHF's cooperation in voluntarily providing certain basic information and reporting related to the Collateral, including information related to the current status of AHF's receivables and finances. Specifically, Texas Capital requested, through AHF's bankruptcy counsel, information regarding what receivables exist, what receivables are currently being generated and/or collected, and what is being done with the proceeds of receivables. AHF has assured me several times over the past weeks that it would provide the information Texas Capital requested related to the Collateral. However, as of the time of the execution of this Affidavit, AHF has not provided Texas Capital any of the information requested."

FURTHER AFFIANT SAYETH NOT

*[signature]*

Chad Crozier, Vice President
Texas Capital Bank, National Association

SWORN TO AND SUBSCRIBED BEFORE ME this 5th day of June 2009, to certify witness my hand and seal of office.

_Valerie Murphree_
Notary Public, State of Texas

My Commission Expires:

10-12-12